UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YONDER ZIJAM HERNANDEZ-INFANTE (A-Number: 243-014-145),<br><br>Petitioner,<br><br>v.<br><br>WARDEN, CALIFORNIA CITY DETENTION FACILITY,<br><br>Respondent. | Case No. 1:26-cv-4735-TLN-JDP<br><br>ORDER; FINDINGS AND RECOMMENDATIONS |

Petitioner Yonder Zijam Hernandez-Infante, a citizen of Venezuela, entered the United States in August 2022. He claimed asylum and was released into the United States by immigration authorities, who then re-detained him on March 16, 2026. Proceeding pro se, petitioner seeks a writ of habeas corpus under 28 U.S.C. § 2241. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner, a citizen on Venezuela, presented himself to the Border Patrol in Eagle Pass, Texas, on August 14, 2022, and requested asylum. ECF No. 1 at 4; ECF No. 7 at 11, 16. He was taken into immigration custody and paroled into the United States on August 14, 2022. ECF No. 1 at 23; ECF No. 8 at 5-6. Respondent concedes that petitioner has been "previously released, and then re-detained" by immigration authorities. ECF No. 7 at 1. There is no allegation or

evidence that petitioner has violated the terms of his parole.

During his release, petitioner lived continuously in the same residence in Orlando, Florida. ECF No. 1 at 5. Petitioner has a valid Florida driver's license and has worked as an Uber driver. *Id.* at 5, 6, 25. Petitioner has had an asylum application pending with USCIS since October 13, 2022. ECF No. 1 at 2, 21. He fled Venezuela after being persecuted as a member of the opposition party and on account of his sexual orientation. *Id.* at 4, 30-32. Petitioner details the physical attacks and threats that he suffered in Venezuela. *Id.* at 30-32.

On December 12, 2025, petitioner was arrested by local authorities for false personation of an officer. ECF No. 7 at 18. Prosecutors dismissed the charge on March 13, 2026. *Id.* Immigration authorities re-detained him on March 16, 2026, and he has remained in custody since that date. *Id.* at 10. Petitioner sought a bond hearing in immigration court, which was denied on April 6, 2026, on the basis that the immigration judge lacked jurisdiction to consider bond in his case. ECF No. 1 at 3, 18.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner claims that his re-detention without individualized consideration of whether he poses a flight risk or a danger violates the Due Process Clause.[1] ECF No. 1 at 7. Respondent counters that petitioner is mandatorily detained under 8 U.S.C. § 1225(b) as an applicant for admission. ECF No. 7 at 1-2. In asserting this statutory argument, respondent fails to acknowledge that it has been consistently rejected by courts in this District and elsewhere. *Id.* at 2-3; *see, e.g.*, *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025). Throughout its response, respondent only addresses petitioner's due process arguments through the lens of its statutory position. ECF No. 7 at 2.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]." *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted). In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." 408 U.S. at 482. The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel,

[1] Petitioner has also filed a motion to prohibit his transfer to any other ICE facilities in this District during these proceedings. ECF No. 6. The court already has prohibited petitioner's transfer outside this District. ECF No. 3. Petitioner has not cited any law authorizing the court to prohibit respondent from transferring him between facilities in this District. Accordingly, I will deny his motion.

the petitioner's "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* The revocation of parole undoubtedly "inflicts a grievous loss on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with issues similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from immigration custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Respondent does not contest that immigration authorities released petitioner into the United States shortly after his entry in in August 2022. ECF No. 7 at 1. Petitioner's records show that he was paroled into the United States on August 15, 2022, and ordered to check in with ICE in Florida. ECF No. 8 at 2, 6. Petitioner has lived in the same apartment in Orlando, Florida since then, has a valid Florda driver's license, and was working as an Uber driver until immigration authorities re-detained him on March 16, 2026. ECF No. 1 at 5, 6, 25; ECF No. 7 at 10. Petitioner formed "enduring attachments of normal life" over the three-and-a-half years between his release by immigration authorities and his re-detention. *See Morrissey*, 408 U.S. at 482.

I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due

Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests); *see also Capote v. Warden, Cal. City Corr. Ctr.*, No. 1:26-cv-3168-JLT-EPG, 2026 WL 1415306, *2 (E.D. Cal. May 20, 2026) (granting writ of habeas corpus where petitioner had been previously paroled into the United States pursuant to the Cuban Humanitarian Parole program).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner has a private interest in his continued release that developed over the three-and-a-half years between his release and present re-detention. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation without a bond hearing is high. Prior to releasing petitioner into the United States, respondent necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after her initial

apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community"). Absent a pre-deprivation bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G.G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for her detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Petitioner's Form I-213 reveals that immigration authorities sought to re-detain petitioner in March 2026 based only on his perceived immigration status. ECF No. 7 at 11. Despite petitioner's pending asylum application, ECF No. 1 at 5, 21, immigration agents incorrectly believed that he had no "pending . . . benefits with USCIS." *Id.* This error and the fact that the government maintains that petitioner is subject to mandatory detention, ECF No. 7, indicate that respondent has not made sufficient efforts to prevent an erroneous deprivation of his liberty. Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without . . . a hearing is 'low.'" *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted). "In immigration court, custody hearings are routine and impose a 'minimal' cost." *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)). Respondent has not provided any information about the additional burden it would bear as a result

of being required to provide a bond hearing. *See* ECF No. 7.

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a bond hearing violates his due process rights. Given this finding, I must determine the appropriate remedy. Petitioner seeks immediate release or a bond hearing. ECF No. 1 at 11. Respondent does not discuss the issue. *See* ECF No. 7.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention."). To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original). In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation process." *Id*. at 128 (cleaned up). Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, there is no evidence, and respondent has presented no argument, suggesting that there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing. *See Zinermon*, 494 U.S. at 128. Petitioner's criminal case had just been dismissed when ICE sought to re-detain him based only on his perceived immigration status. ECF No. 7 at 11, 18. The criminal arrest was not a basis for his re-detention: ICE did not detain him after his criminal arrest in December 2025, waited until charges were dismissed to take him into immigration custody, and only cited his perceived immigration status

as a basis for arrest.[2] ECF No. 7 at 10-12. Moreover, as noted, there is no allegation or evidence that petitioner has violated the terms of his parole. In fact, respondent does not argue that petitioner is a danger or a flight risk. *See* ECF No. 8. More to the point, respondent does not explain why it was unable to provide petitioner with a pre-deprivation hearing when local charges had already been dismissed and immigration officers had time to plan to re-detain petitioner. *See id*.

Under these circumstances, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without a pre-deprivation hearing. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning him to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

Accordingly, I recommend that petitioner be released.[3]

**Conclusion**

Accordingly, petitioner's motion to prohibit his transfer to another ICE facility in this district, ECF No. 6, is DENIED.

Further, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 243-014-145) from its custody on the same conditions as his prior release. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-

---

[2] Further, respondent does not provide any evidence of the underlying charges, such as a police report. Petitioner states that he was arrested for impersonating a police officer because he had flashing colored lights on his car. ECF No. 1 at 34. Petitioner states that he had not used the lights before, did not know that they produced colors, and that he "immediately disconnected" them when the color appeared. *Id*. Respondent does not contest petitioner's characterization of the incident leading to his arrest.

[3] As petitioner does not have a removal order or protections against removal to his home country, his request for habeas relief against third-country removal is not ripe for review. *See* ECF No. 1 at 9; *Abbott Lab'ys, Inc. v. Gardner*, 387 U.S. 136, 148-49 (1967) ("[The ripeness doctrine's] basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.").

deprivation hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a constitutionally compliant pre-deprivation bond hearing before a neutral arbiter at which the government bears the burden of proving flight risk or danger by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: July 17, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE